# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

## DECISION and ORDER

---

**John and Jane Doe,** individually
and as parents and natural guardi-
ans of John Doe II,

        Plaintiffs,

    v.

**Hilton Central School District,**
et al.,

        Defendants.

23-cv-6367-FPG-MJP

---

**John and Jane Doe,** individually
and as parents and natural guardi-
ans of John Doe II,

        Plaintiffs,

    v.

**Hilton Central School District,**
et al.,

        Defendants.

23-cv-6368-FPG-MJP

---

---

**John and Jane Doe,** individually
and as parents and natural guardi-
ans of John Doe II,

        Plaintiffs,

     v.

**Hilton Central School District,**
et al.,

        Defendants.

23-cv-6369-FPG-MJP

---

## APPEARANCES

For Plaintiffs:          **Ashley R. Westbrook, Esq.**
**Peter J. Glennon, Esq.**
The Glennon Law Firm
160 Linden Oaks
Rochester, NY 14625

For Defendants:         **Carmen T. Rodriguez, Esq.**
McGivney, Kluger, Clark &
Intoccia, P.C.
80 Broad St, 23rd Fl
New York, NY 10004

**Gary J. Intoccia, Esq.**
**Joseph A. Gallo, Esq.**
**Marc C. Pakrul, Esq.**
**Emily R. Weisslitz, Esq.**
McGivney, Kluger, Clark &
Intoccia, P.C.
18 Columbia Turnpike, Ste 300
Florham Park, NJ 07932

## INTRODUCTION

Plaintiffs often wish to change their complaints. A plaintiff may

ask to add parties or facts. But courts do not allow pointless changes. If

the court would not permit a claim in the first place, the plaintiff cannot add it later.

Here, Plaintiffs John and Jane Does, on behalf of their children, ask the Court if they may add an alternative theory of liability with facts to support it. They ask this because Defendant Hilton Central School District is not vicariously liable for Defendant Kirk Ashton's sexual abuse of their children while they were enrolled at the school where Ashton worked. The Court already granted the John and Jane Does leave to amend their complaints in all other respects—except for this alternate theory of liability. That alternate theory is *respondeat superior*.

*Respondeat superior* is the legal concept that an employer is liable for an employee's torts if that employee is acting within the scope of his or her employment. *See* Restatement (Third) of Torts: Misc. Provisions § 3 ("Vicarious Liability of Employers for Torts of Employees Committed Within the Scope of Employment"). New York law uniformly holds, however, that an employer is not responsible via *respondeat superior* for an employee's sexual assault of a patient, customer, or student (among others). So, the John and Jane Does chart a different course.

The John and Jane Does want to add a theory of *respondeat superior* because they believe that bystander employees, namely an as-

sistant principal, who took no action to stop Ashton's abuse may be liable, and thus Hilton along with them. They argue that *respondeat superior* is a cognizable theory of liability because these employees failed to sound the alarm. That argument centers on Assistant Principal Kelley O'Connell-Byrne who testified at Ashton's criminal trial that she saw signs of Ashton's abuse yet did not report them.

While the Court wholeheartedly agrees that bystander employees failed to respond to signs of Ashton's sexual abuse, Hilton is not automatically responsible for the damages stemming from their tortious conduct. Their actions must fall within the scope of their employment and be in furtherance of their employer's business. And bystander employee liability does not make Hilton liable for every ounce of damage Ashton caused. Vicarious liability will only attach based on what bystander employees knew or should have known.

The Court thus holds, *first*, that the John and Jane Does adequately plead a claim of negligence as to O'Connell-Byrne as a bystander employee. *Next*, the John and Jane Does may assert *respondeat superior* as a cognizable theory of recovery against Hilton for bystander employees who failed to sound the alarm. New York law allows this. *Finally*, the John and Jane Does adequately plead *respondeat superior* in their proposed third amended complaints. *Meaning*, contrary to Hilton's arguments, the complaints adequately plead

scope and furtherance of employment. The Court thus **GRANTS** the John and Jane Does' motions to amend.

But this decision is a narrow one. Discovery may bear out that O'Connell-Byrne—or other bystander employees—failed to sound the alarm for personal motives. If so, they acted outside the scope of their employment. This decision is likewise not a blank check to the John and Jane Does for all of Ashton's conduct. The complaints only allege damages as to O'Connell-Byrne. Her tenure at Northwood Elementary appears much shorter than Ashton's. So, the damages she caused by not reporting Ashton's conduct would necessarily be limited to her tenure. And they may be further limited by a jury's finding that she lacked adequate knowledge of Ashton's conduct until years into her tenure.

## PROCEDURAL HISTORY

Because the Court issued an oral decision, it will not provide an exhaustive procedural history. In that oral decision, the Court granted the John and Jane Does' motions to amend in all other respects, save *respondeat superior*.[1] The Court held that the John and Jane Does

---

[1] (Tr. of Oral Decision, ECF No. 24, Case No. 23-cv-6367, Feb. 27, 2024 (transcript of bench decision as to all three cases).) For ease of reading, since this is a consolidated decision and order, the Court has opted to include citations to litigation documents and the docket in footnotes.

state a claim in their proposed third amended complaints under Title IX.[2]

The State of New York prosecuted Ashton, trying him in October 2022. The jury found him guilty of dozens of counts of child abuse and endangering the welfare of a child. The New York State Supreme Court hearing the case sentenced him to 63 years in prison.

After Ashton's trial, parents of the children Ashton abused sued Hilton and its senior staff. These cases are but three of many.

Some of these "Hilton cases" made their way to this Court. This trio of cases is before the Court because Hilton removed each of them from Monroe County Supreme Court on June 28, 2023.[3] Hilton removed the cases after the John and Jane Does amended their complaints to add federal claims.

***The John and Jane Does move to amend under the operative scheduling order.***

After Hilton answered the John and Jane Does' complaints, the Hon. Frank P. Geraci, Jr., Senior District Judge, referred each of these

---

[2] (*See id.*)

[3] (Not. of Removal, Case No. 23-cv-6367, ECF No. 1 ("6367"); Not. of Removal, Case No. 23-cv-6368, ECF No. 1 ("6368"); Not. of Removal, 23-cv-6369, ECF No. 1 ("6369").)

cases to the undersigned on September 20, 2023.[4] After Judge Geraci's referral, the Court met with the parties to discuss scheduling. The Court entered an amended consolidated scheduling order that included these cases on September 25, 2023.[5] While that scheduling order contemplates a date for the end of discovery, it did not set a deadline for the parties to file motions to amend.[6]

The John and Jane Does moved to amend in this trio of cases on October 26, 2023.[7] Since the Court set no deadline for motions to amend or to add parties, this motion is timely under Fed. R. Civ. P. 16. So, the Court need not analyze this motion under Rules 15 and 16. *See Thomas v. ConAgra Foods*, No. 20-CV-6239-EAW-MJP, 2022 WL 3227644 at *2–3 (W.D.N.Y. Apr. 21, 2022), *adopted*, 2022 WL 3699408 (W.D.N.Y. Aug. 26, 2022). But the Court must, of course, consider Hilton's opposition.[8] Hilton opposed the motions to amend based on undue

---

[4] (6367 ECF No. 8; 6368 ECF No. 8; 6360 ECF No. 9.)

[5] (6367 ECF No. 10; 6368 ECF No. 10; 6369 ECF No. 11.)

[6] (*See id.*)

[7] (6367 ECF No. 14; 6368 ECF No. 14; 6369 ECF No. 15.)

[8] (6367 ECF No. 15; 6368 ECF No. 15; 6369 ECF No. 16.)

delay, a lack of good faith, and futility regarding the Title IX claim and theory of *respondeat superior*.[9]

### The Court issues a bench decision on the John and Jane Does' motions to amend, except concerning respondeat superior.

After considering the John and Jane Does' submissions and Hilton's opposition, the Court set oral argument for January 12, 2024. Before oral argument, the Court determined that it would issue a partial bench decision. After hearing from the parties and recessing to consider their arguments, the Court issued a partial decision granting in all other respects the John and Jane Does' motions to amend.[10] The Court held that the John and Jane Does did not unduly delay in bringing their motions to amend.[11] The Court likewise held that the John and Jane Does did not show any lack of good faith in bringing their motions to amend.[12] And the Court permitted the John and Jane Does to add a claim under Title IX.[13]

---

[9] (*See id.*)

[10] (6367 Minute Entry, ECF No. 21, Jan. 12, 2024; 6367 Minute Entry, ECF No. 20, Jan. 12, 2024; 6369 Minute Entry, ECF No. 21, Jan. 12, 2024; *see also* 6367 Tr. of Oral Decision, ECF No. 24.)

[11] (*Id.*)

[12] (*Id.*)

[13] (*Id.*)

***The Court orders supplemental briefing.***

But the Court remained undecided about the John and Jane Does' motions to amend to add *respondeat superior* as a theory of liability. On considering New York law and the parties' briefing, the Court ordered the parties to provide supplemental briefing.[14]

For the supplemental briefing, the Court asked the parties to answer three or four questions designed to hone their arguments. *First*, the Court asked if New York courts consider alternative theories of liability—such as *respondeat superior*—duplicative of direct negligence claims. *Second*, the Court noted that New York courts seem to accept the idea that while one employee might act outside his employment (*e.g.*, Ashton), a bystander employee may act within the scope of her employment, creating liability for the employer. The Court asked if this bystander employee reasoning would apply to this case. *Third*, the Court requested that the parties address whether *respondeat superior* was adequately pled regarding O'Connell-Byrne. *Finally*, for the John and Jane Does only, the Court asked if *respondeat superior* is "an alternative theory with respect to the battery and assault claims"[15] al-

---

[14] (6367 Text Order, ECF No. 25, Feb. 28, 2024; 6368 Text Order, ECF No. 23, Feb. 28, 2024; 6369 Text Order, ECF No. 24, Feb. 28, 2024.)

[15] (*See id.*)

ready in the John and Jane Does' operative complaint. The Court considered the supplemental briefing in rendering this decision.

## FACTUAL BACKGROUND

The proposed third amended complaints in these cases do not add new defendants. But they do discuss a new theory of liability, *respondeat superior*. The complaints do this by introducing a new character, Assistant Principal Kelley O'Connell-Byrne.[16] "From January 2014 to October 19, 2022," the complaints state, "Ms. O'Connell-Byrne was an employee of the Hilton Central School District."[17]

In that position, Hilton granted her considerable authority. Indeed, as Assistant Principal, O'Connell-Byrne "had the second highest level of authority for Hilton Central School District at Northwood Elementary School."[18] That authority included "supervisory responsibili-

---

[16] (Westbrook Decl., Ex. A ¶ 38, ECF No. 14-3 ("6367 Proposed 3d Am. Compl."); 6368 Westbrook Decl., Ex. A ¶ 38, ECF No. 14-3 ("6368 Proposed 3d Am. Compl."); 6369 Westbrook Decl. Ex. A ¶ 38, ECF No. 15-3 ("6369 Proposed 3d Am. Compl.").) Having identified the citations and docket numbers of the proposed third amended complaints, where the three complaints contain the same allegations in corresponding paragraphs, the Court will refer to them together as the "Proposed 3d Am. Compls."

[17] (Proposed 3d Am. Compls. ¶ 39.)

[18] (*Id.* ¶ 40.)

ties and decision-making authority."[19] It also included managerial authority.[20]

But that authority came with responsibilities: "As employees of Defendant [Hilton], Defendant Ashton and Ms. O'Connell-Byrne had a legal duty and moral responsibility to intervene to stop and/or report any behaviors or actions that endangered the health, welfare, and safety of the children at Northwood Elementary School."[21] Yet O'Connell-Byrne breached that duty by failing to sound the alarm about Ashton's conduct around young male students. And she did so while acting within the scope of her employment, the complaints allege.[22]

The complaints elaborate on how O'Connell-Byrne knew or should have known about Ashton's abusive conduct. For this, they rely

---

[19] (*Id.* ¶ 41.)

[20] (*Id.* ¶ 42.)

[21] (*Id.* ¶ 51 (alteration added); *see also id.* ¶ 53 (noting that Hilton "assigned" this duty to Ashton and O'Connell-Byrne); *id.* ¶ 56 ("As district administrators, Defendant Dimbleby, Defendant Kosiorek, Defendant Ashton, and Ms. O'Connell-Byrne all had supervisory authority to institute corrective measures on behalf of the district.").) For each John Doe II, the complaints unambiguously plead duty: "Defendants and Ms. O'Connell-Byrne owed Plaintiff, John Doe II, a duty of care to not allow Plaintiff, John Doe II, to be in a situation that would foreseeably pose him danger." (6367 & 6368 Proposed 3d Am. Compls. ¶ 96; 6369 Proposed 3d Am. Compl. ¶ 93.)

[22] (*Id.* ¶ 43; *see also id.* ¶¶ 44–51 (defining how O'Connell-Byrne's actions fell within the scope of her employment).)

heavily on O'Connell-Byrne's testimony from Ashton's trial. Her testimony suggests she may have acted within the scope of her employment when she failed to act:

- O'Connell-Byrne observed boys in Ashton's office every day, throughout the day.[23]

- O'Connell-Byrne saw boys sitting on Ashton's lap in his office.[24]

- O'Connell-Byrne observed *only* boys—often the same boys— going to-and-from Ashton's office.[25]

- O'Connell-Byrne witnessed Ashton frequently touching boys, including squeezing their necks and touching them on their shoulders.[26]

- Even when students and teachers were supposed to be socially distancing, O'Connell-Byrne noted a single male student or a

---

[23] (6367 & 6368 Proposed 3d Am. Compls. ¶¶ 106, 110, 113(a); 6369 Proposed 3d Am. Compl. ¶¶ 103, 107, 110(a).)

[24] (6367 & 6368 Proposed 3d Am. Compls. ¶¶ 112 & 113(b); 6369 Proposed 3d Am. Compl. ¶¶ 109 & 110(b).)

[25] (6367 & 6368 Proposed 3d Am. Compls. ¶ 113(c); 6369 Proposed 3d Am. Compl. ¶ 110(c).)

[26] (6367 & 6368 Proposed 3d Am. Compls. ¶ 113(e); 6369 Proposed 3d Am. Compl. ¶ 110(e).)

small group of male students in Ashton's office despite COVID-19 protocols.[27]

The complaints allege other damning facts. At least once, O'Connell-Byrne saw Ashton reach inside a boy's shirt during morning announcements.[28] And the complaints allege that she "accompanied Defendant Ashton to pick up at least one young male student from home while still in his pajamas … and observed that the student was directed to change into his clothes in Defendant Ashton's office, behind closed doors."[29]

Despite Ashton's disturbing pattern of conduct, O'Connell-Byrne did not report Ashton. She explained her failure, stating that while she "thought the boundaries" with male students "were very skewed" and that "they were not appropriate," she feared losing her job.[30] She added

---

[27] (6367 & 6368 Proposed 3d Am. Compls. ¶ 113(h); 6369 Proposed 3d Am. Compl. ¶ 110(h).)

[28] (6367 & 6368 Proposed 3d Am. Compls. ¶ 114; 6369 Proposed 3d Am. Compl. ¶ 111.)

[29] (6367 & 6368 Proposed 3d Am. Compls. ¶ 256(d); *see also id.* ¶¶ 115–19; 6369 Proposed 3d Am. Compl. ¶ 253(d); *see also id.* ¶¶ 112–16.)

[30] (6367 & 6368 Proposed 3d Am. Compls. ¶¶ 113(i) & 113(j); 6369 Proposed 3d Am. Compl. ¶¶ 110(i) & 110(j).)

that because Ashton was her boss, it was not her job to supervise him.[31]

Eventually, however, O'Connell-Byrne decided she had to do something, formulating "a plan in her head" to report Ashton because she saw a sixth-grade boy sitting on his lap.[32] She "though[t] that was highly inappropriate."[33] But she "never had a chance"[34] because Ashton was placed on administrative leave.[35]

## LEGAL STANDARD

Under Fed. R. Civ. P. 15, this Court should "freely" grant leave to amend a plaintiff's complaint. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Courts indicate that the Rule 15 standard is a "lenient" one. *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). The district court has discretion over whether to grant the

---

[31] (6367 & 6368 Proposed 3d Am. Compls. ¶ 113(l); 6369 Proposed 3d Am. Compl. ¶ 110(l).)

[32] (6367 & 6368 Proposed 3d Am. Compls. ¶ 113(k); 6369 Proposed 3d Am. Compl. ¶ 110(k).)

[33] (6367 & 6368 Proposed 3d Am. Compls. ¶ 113(k); 6369 Proposed 3d Am. Compl. ¶ 110(k).)

[34] (*See id.*)

[35] (Proposed 3d Am. Compls. ¶ 17.)

plaintiff leave to amend. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 320 (1971).

But Rule 15 does not allow a plaintiff to make any changes he or she wants. Under Rule 15(a)(2), the Court retains discretion to deny a motion to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted). The Court already found that the John and Jane Does' proposed third amended complaints do not fail on grounds of prejudice or delay. Only futility remains.

"One good reason to deny leave to amend is when such leave would be futile[,]" *i.e.*, pointless. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995). A motion to amend is futile if it would fail to "pass muster under Rule 12(b)(6)." *Tannerite Sports, LLC v. NBC Universal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017). The Rule 12(b)(6) standard is well known: "To survive a motion to dismiss" under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

While federal law governs the motion to amend standard, New York law controls this Court's decision on the questions surrounding *respondeat superior*. *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 413 (W.D.N.Y. 2018) ("Federal courts sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal procedural law."). To determine if the John and Jane Does adequately plead *respondeat superior*, after taking "as true all the facts alleged by plaintiff," the Court must assess whether "the conduct complained of" falls "within the scope of employment." *Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 329 (S.D.N.Y. 1996). The Court should also bear in mind that "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Id.* (quoting *Riviello v. Waldron,* 47 N.Y.2d 297, 302 (1979)).

## DISCUSSION

The Court's futility analysis centers on several questions. *First*, do the John and Jane Does adequately plead an underlying claim of negligence against O'Connell-Byrne as a bystander employee? *Second*, may the John and Jane Does plead a theory of *respondeat superior* against Hilton? *Finally*, do the John and Jane Does adequately plead a theory of *respondeat superior*? The Court answers *yes* to each of these

questions. Taking the complaints as true, the Court determines that they plausibly allege that bystander employees like O'Connell-Byrne may have acted within the scope of their employment. The complaints are accordingly not futile.

### *The John and Jane Does adequately plead an underlying claim of negligence.*

The proposed third amended complaints adequately plead negligence by O'Connell-Byrne as a bystander employee. *See Navaeh T. v. City of N.Y.*, 132 A.D.3d 840, 843 (2015) ("[T]he complaint adequately alleged that other employees of the DOE were negligent in the performance of their respective duties, and that such negligence constituted a proximate cause of the infant plaintiff's injuries."). Here, the John and Jane Does allege that O'Connell-Byrne owed their children a duty of care and breached it, resulting in their children's foreseeable injury. *See Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (2023) ("It is well-settled that to establish a claim of negligence, a plaintiff must prove: a duty owed to the plaintiff by the defendant, a breach of that duty, and injury proximately resulting therefrom.").

For duty, the complaints allege that "O'Connell-Byrne had a legal duty and moral responsibility to intervene to stop and/or report any behaviors or actions that endangered the health, welfare, and safety of

the children at Northwood Elementary School."[36] That duty stemmed from her responsibilities and authority as Assistant Principal.[37] *See also Spring v. Allegany-Limestone Cent. Sch. Dist.*, 221 A.D.3d 1474, 1475–76 (4th Dep't 2023) (quoting *Stephenson v. City of New York*, 19 N.Y.3d 1031, 1033 (2012)) ("The nature of the duty is that the school must exercise such care of its students as a parent of ordinary prudence would observe in comparable circumstances.") (cleaned up).

O'Connell-Byrne breached that duty by failing to report Ashton's pattern of disturbing conduct around young male students. And, as discussed, the complaints provide ample facts plausibly showing that O'Connell-Byrne was aware—or should have been aware—of Ashton's abuse. The Court thus disagrees with Hilton that the John and Jane Does "failed to set out the elements of the tort committed by her in the complaint."[38] The John and Jane Does successfully plead negligence. So, the complaints do not fail for futility on that basis.

---

[36] (Proposed 3d Am. Compls. ¶ 51.) The complaints likewise allege that O'Connell-Byrne is a mandatory reporter. (6367 & 6368 Proposed 3d Am. Compls. ¶ 142; 6369 Proposed 3d Am. Compl. ¶ 139.)

[37] (Proposed 3d Am. Compls. ¶¶ 40–42.)

[38] (6367 Def.s' Suppl. Letter Br. at 6, ECF No. 26, Mar. 4, 2024; 6368 Def.s' Suppl. Letter Br. at 6, ECF No. 24, Mar. 4, 2024; 6369 Def.s' Suppl. Letter Br. at 6, ECF No. 25, Mar. 4, 2024.) Having identified the citations for Hilton's supplemental letter briefing, as well as their docket numbers, the (*continued*)

The Court likewise rejects Hilton's argument that the John and Jane Does "failed to sufficiently allege that the Assistant Principal was negligent because they failed to name her as a defendant."[39] The case law Hilton cites supports only the proposition that to hold an employer vicariously liable the plaintiff must state a valid cause of action against the employee. *See Pereira v. St. Joseph's Cemetery*, 54 A.D.3d 835, 837 (2d Dep't 2008) (quoting *Karaduman v. Newsday, Inc.,* 51 N.Y.2d 531, 546 (1980)) ("A claim of vicarious liability cannot stand when 'there is no primary liability upon which such a claim of vicarious liability might rest.'") As discussed, the John and Jane Does adequately alleged negligence. In any event, a "plaintiff is not obligated to sue the employee in order to obtain *respondeat superior* liability of the employer." *Ferreira v. City of Binghamton*, 975 F.3d 255, 278 (2d Cir.), *certified question accepted*, 35 N.Y.3d 1105 (2020), and *certified question answered*, 38 N.Y.3d 298 (2022) (collecting New York cases). The Court thus rejects Hilton's argument.

---

Court will refer to them together as "Def.s' Suppl. Letter Brs." These letters are the supplemental briefing to which the Court referred above at pages 8–9.

[39] (Def.s' Suppl. Letter Brs. at 6.)

**The John and Jane Does may assert a theory of** respondeat su-
perior *against Hilton.*

Under New York law, the John and Jane Does may assert tort
claims against bystander employees like the Assistant Principal. *See
Cort v. Marshall's Dep't Store*, No. 14CV7385NGGRER, 2015 WL
9582426, at *4 (E.D.N.Y. Dec. 29, 2015) ("Accordingly, even where the
direct tortfeasor was not acting within the scope of her employment
when she commits the predicate tort, an employer may nonetheless be
liable under a theory of respondeat superior if other employees, acting
within the scope of their employment, negligently respond to the direct
tortfeasor."). Thus, in *Cort*, because the plaintiff alleged that she told
store managers about an employee's harassing conduct, the employer
could be held liable for the managers' failure to respond. *See id*.; *accord
Navaeh T.*,132 A.D.3d at 843.[40]

Nowhere is this principle better stated than in a case Hilton
cites, *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247 (2002). There, the New
York Court of Appeals held that "[a] hospital has a duty to safeguard
the welfare of its patients, even from harm inflicted by third persons,

---

[40] Hilton concedes this in its supplemental briefing, stating, "*Navaeh
T.* and [its] progeny support the proposition that an employer may be held
vicariously liable for the actions and omissions of other school district em-
ployees who failed to act to prevent abuse, even though the employer could
not be found vicariously liable for the teacher's sexual abuse." (Def.s' Suppl.
Letter Brs. at 5.)

measured by the capacity of the patient to provide for his or her own safety." 97 N.Y.2d at 252. "In *Cabrini*, the hospital had an independent duty to prevent the employee who acted outside the scope of his employment from harming the plaintiff." *Doe v. Guthrie Clinic, Ltd.*, 22 N.Y.3d 480, 488 (2014) (Rivera, J., dissenting). "Thus, the hospital could be liable for the breach of its duty through the inaction of its nursing staff in the face of obvious risks." *Id.* (citing *Cabrini*, 97 N.Y.2d at 253–54).

Like in *Cabrini*, the John and Jane Does ask the Court to consider two sets of characters with "two separate sets of facts."[41] The proposed third amended complaints attempt to plead two routes to liability. One line of direct liability runs through Ashton. The John and Jane Does represent that direct negligence runs through Ashton alone. Likewise, the line of vicarious liability runs through bystander employees like O'Connell-Byrne and "not Ashton."[42]

---

[41] (6367 Pl.s' Suppl. Letter Br. at 2, ECF No. 27, Mar. 4, 2024; 6368 Pl.s' Suppl. Letter Br. at 2, ECF No. 25, Mar. 4, 2024; 6369 Pl.s' Suppl. Letter Br. at 2, ECF No. 26, Mar. 4, 2024.) Having identified the citations for the John and Jane Does' supplemental letter briefing, the Court will refer to them together as "Pl.s' Suppl. Letter Brs."

[42] (Pl.s' Suppl. Letter Brs. at 3.) The Court notes that, as pled, the third amended complaints only allege a theory of *respondeat superior* through O'Connell-Byrne.

Hilton points to case law indicating that "a plaintiff may only recover on a theory of respondeat superior or upon a theory of negligent hiring and retention, but not upon both theories."[43] Hilton thus argues that the theories are mutually exclusive.[44] The *Neiger* line of cases on which Hilton relies, however, rest on a plaintiff suing the same employee or group of employees under direct negligence theories while trying to hold the employer vicariously liable. No surprise, New York courts do not let such conflicting claims proceed. *See Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 324 (1st Dep't 1997) ("This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training."). But the *Neiger* line of cases does not describe the case before the Court. Again, this case features *two sets* of employees and two sets of corresponding facts: Ashton and the bystander employees.[45] It also features alternative pleading, which is permissible in federal court.

---

[43] (Def.s' Suppl. Letter Brs. at 3.)

[44] (*Id.* at 2 (quoting *Neiger v. City of New York*, 72 A.D.3d 663, 664 (2d Dep't 2010).)

[45] While Hilton's argument in Point I of its supplemental briefing does not alter the Court's conclusion that the John and Jane Does may plead con- (*continued*)

Even if the John and Jane Does' alternate theory of *respondeat superior* conflicts with their other theories of liability, that is permissible. *See Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 285 F. Supp. 3d 579, 593 (W.D.N.Y. 2018) ("At the pleading stage, a party is entitled to plead in the alternative, *see* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"), and is not required to elect between legal and equitable relief."). Here, federal procedural law governs. So, Rule 8 determines that the John and Jane Does may bring inconsistent claims.

In sum, the John and Jane Does may plead these two routes to liability. They may plead direct negligence and, alternatively, negli-gence via *respondeat superior*.[46] The Court turns next to the question of whether the John and Jane Does adequately plead *respondeat superior* in their complaints.

### *The John and Jane Does adequately plead* respondeat superior.

"Under New York law, an employee acts within the scope of his employment when (1) the employer is, or could be, exercising some con-

---

flicting theories of liability, the issue of what the John and Jane Does may *recover* is very much an open question. Naming bystander employees as a backup path to liability may not change the total amount of damages available.

[46] To this end, the direct negligence claims include the alternative negligence claim. (*See, e.g.*, 6367 Proposed 3d Am. Compl. ¶¶ 171–79.)

trol, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016) (quoting *Hamm v. United States*, 483 F.3d 135, 138 (2d Cir. 2007)) (applying New York's law concerning *respondeat superior* in the FTCA context) (cleaned up). "The theory is that the employer should, as a required cost of doing business … compensate a party harmed by an employee who was acting not on his or her own behalf, but in the employer's service." *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 350 (E.D.N.Y. 2019) (quoting *Rausman v. Baugh*, 248 A.D.2d 8, 10 (2d Dep't 1998)). "An employer will not be responsible for the torts of an employee who is not acting in furtherance of his employer's business or who acts only on personal motives." *A.W. by E.W. v. New York Dep't of Educ.*, No. 19-CV-7011 (MKB), 2023 WL 7485182, at *4, --- F. Supp. 3d ---- (E.D.N.Y. Nov. 13, 2023) (collecting cases).

Here, the complaints suggest that O'Connell-Byrne failed to act in part because of personal motives. The complaints allege that O'Connell-Byrne feared for her job. Discovery may bear out that this was really her only motivation for not reporting Ashton. And if O'Connell-Byrne acted on personal motivation alone, Hilton will not be liable by *respondeat superior* for her tortious conduct. *See, e.g., Burlarley v. Wal-Mart Stores, Inc.*, 75 A.D.3d 955, 956 (3d Dep't 2010)

("Moreover, the cashier's actions arose not from any work-related motivation, but rather her desire to pass the time and relieve mounting frustration with her job."). But, as discussed below, the complaints plead that O'Connell-Byrne eventually started forming a plan to report Ashton. And she may have been under the impression that she could not supervise Ashton. These facts plausibly suggest that she was not acting entirely on personal motives.

Even where personal motives are involved, intentional torts and unintentional torts alike "may still fall within the scope of employment" because "the motivation for such conduct … is but one of several factors" the Court should consider. *A.W. by E.W.*, 2023 WL 7485182, at *4 (quoting *M.K. v. State*, 216 A.D.3d 139, 143 (3d Dep't 2023)) (cleaned up and omission in original). These factors create a "fact-intensive" inquiry. *Fountain*, 838 F.3d at 138 ("But the question whether [the defendant] was acting 'in furtherance of the duties he owes to his employer' is more fact-intensive than the government suggests."). The other factors that courts consider deal with foreseeability, the employee's history with the employer, and how the tortious conduct happened:

> (1)    the connection between the time, place, and occasion for the act;
>
> (2)    the history of the relationship between employer and employee as spelled out in actual practice;

(3)    whether the act is one commonly done by such an employee;

(4)    the extent of departure from normal methods of performance;

(5)    and whether the specific act was one that the employer could reasonably have anticipated.

*Riviello*, 47 N.Y.2d at 303; *accord Agyin v. Razmzan*, 986 F.3d 168, 185 (2d Cir. 2021). Some of the Court's discussion shows why this motion is a close call. For example, the fourth *Riviello* factor (departure from normal methods) may favor a finding that O'Connell-Byrne was not acting within the scope of her employment.

When considering the *Riviello* factors and the law of *respondeat superior* in New York, however, the complaints are sufficient. *First*, the complaints allege that O'Connell-Byrne eventually began to plan to act on her observations. O'Connell-Byrne became especially concerned when Ashton had older students sitting on his lap, including a sixth-grade boy. O'Connell-Byrne's conflicting statements about personal motivation give the Court pause about resolving *respondeat superior* at the pleading stage when this inquiry is meant to be fact-intensive. After all, to act within the scope of their employment, an employee need only act "in part to benefit the employer." *Agyin*, 986 F.3d at 185 (citation omitted).

*Second*, the complaints allege that most—if not all—of O'Connell-Byrne's observations of Ashton's behavior occurred while

working as the Assistant Principal at Northwood Elementary. While at work, the complaints allege, she saw Ashton interacting with boys, having boys sit on his lap, and even saw him reach down a boy's shirt during the morning announcements. *See Pizzuto v. Cnty. of Nassau*, 239 F. Supp. 2d 301, 314 (E.D.N.Y. 2003) (finding at summary judgment "an undisputed connection between the time, place and occasion for the act," because the defendants "were on duty within their assigned work area") (internal quotation marks omitted). The complaints likewise allege that her position gave her significant authority, including over decision-making.

*Third*, the complaints allege that O'Connell-Byrne's failed to report despite her proximity to Ashton. The two had neighboring offices. O'Connell-Byrne observed boys sitting on Ashton's lap in his office. She saw Ashton reach down a boy's shirt during the morning announcements. *See Cabrini*, 97 N.Y.2d at 254 ("Despite the nurses' assertions that they saw or heard nothing, an additional key question of credibility arises from the inference created by the undisputed close proximity of all of the nurses to plaintiff's bed."). The complaints add that she was not the only one to observe this disturbing conduct. And because the complaints allege that his conduct was known to other employees, they sufficiently plead foreseeability. *See Shante D. by Ada D. v. City of New York*, 190 A.D.2d 356, 362 (1st Dep't 1993), *aff'd*, 83 N.Y.2d 948

(1994) (noting that "evidence of a potential for harm" in the form of conduct and actual warnings required "some greater degree of supervision than was afforded"). The complaints adequately allege that O'Connell-Byrne could have foreseen harm to students if she did not act.

*Fourth,* the Court reasonably infers from the complaints that reporting sexual abuse of students would be an act Hilton would expect of senior staff like O'Connell-Byrne. *Cf. Rausman*, 248 A.D.2d at 12–13 (holding that inaccurate report of sexual harassment did not fall within scope of employment because the defendant "as a social worker, was not hired for the purpose of making allegations of alleged sexual harassment"). Teachers are hired to ensure the safety of students. As discussed, they stand *in loco parentis. See Spring* 221 A.D.3d at 1475–76.

But as the Court has already suggested, discovery could swing this entire analysis the other way. Consider the fourth *Riviello* factor: O'Connell-Byrne's failure to report may be an extreme enough departure from her normal methods of performance that she acted outside the scope of her employment. *See Rivera v. State*, 34 N.Y.3d 383, 391 (2019) (noting that corrections officers' "gratuitous and utterly unauthorized use of force was so egregious as to constitute a significant departure from the normal methods of performance" of his job). As with personal motivation, however, the complaints plead adequate facts to

suggest that this was not so extreme a departure. After all, the complaints plead that O'Connell-Byrne eventually started forming a plan to report Ashton. And Courts have held employers vicariously liable even in extreme situations. *See, e.g., Ramos v. Jake Realty Co.*, 21 A.D.3d 744, 746 (1st Dep't 2005) ("While there is no doubt that the superintendent's resort to physical violence was in poor judgment, this in itself does not absolve defendants of liability for his acts.").

In sum, while the Court **GRANTS** the John and Jane Does motions to amend in full, the Court notes that this is not a dispositive decision on the *Riviello* factors or about whether bystander employees like O'Connell-Byrne acted within the scope of their employment. The Court holds only that, for now, the John and Jane Does have done enough.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiffs John and Jane Does' motions to amend: Case No. 23-cv-6367, ECF No. 14; Case No. 23-cv-6368, ECF No. 14; Case No. 23-cv-6369, ECF No. 15. No later than March 29, 2024, Plaintiffs John and Jane Does must file their amended complaints.

**IT IS SO ORDERED.**

Dated:     March 8, 2024
           Rochester, NY

_____
MARK W. PEDERSEN
United States Magistrate Judge